UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACUSHNET COMPANY,<br><br>       Plaintiff,<br><br>  v.<br><br>GOLF GODS PTY LTD,<br><br>       Defendant. | Case No. 1:18-cv-12093<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT**

Plaintiff Acushnet Company ("Plaintiff" or "Acushnet") brings this complaint for trademark and trade dress infringement, patent infringement, false designation of origin, unfair competition, trademark dilution, and unfair trade practices arising under federal, state, and/or common law against Golf Gods Pty Ltd ("Defendant"). Plaintiff, by its undersigned attorneys, alleges as follows, upon actual knowledge as to itself, and upon information and belief as to all other matters:

**NATURE OF ACTION**

1. This is a civil action for trademark and trade dress infringement, false designation of origin, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, patent infringement under 35 U.S.C. § 271, trademark dilution under Mass. Gen. Laws ch. 110H, § 13, unfair trade practices under Mass. Gen. Laws ch. 93A, § 11, and unfair competition under the common law of Massachusetts.

2. Defendant is advertising, promoting, offering for sale, selling, and distributing golf balls and accessories, clothing, and headwear under one or more of the following marks in violation of Plaintiff's trademark rights: (i) TITTIES (depicted in Plaintiff's distinctive, stylized "TITLEIST" script); (ii) HOE V1; (iii) #1 SLUTTIEST BALL IN GOLF; and (iv) FJ FOOTJOB

(collectively, the "Infringing Marks"). Goods bearing one or more of the Infringing Marks are hereafter referred to as "Infringing Products."

3. Additionally, Defendant is advertising, promoting, offering for sale, selling, and distributing golf balls using packaging that is nearly identical in appearance and overall commercial impression to a unique, distinctive, and non-functional trade dress, as shown in Paragraph 26 (the "Acushnet Trade Dress"), that is used on packaging for Acushnet's TITLEIST PRO V1 golf balls and for which Plaintiff owns a design patent. Defendant's golf ball packaging is hereafter referred to as the "Infringing Trade Dress."

4. Plaintiff seeks equitable relief and damages for Defendant's use of the Infringing Trade Dress and the Infringing Marks, which are confusingly similar to and dilutive of Plaintiff's following federally registered and famous trademarks: (i) TITLEIST; (ii) TITLEIST (stylized); (iii) PRO V1; (iv) TITLEIST #1 BALL IN GOLF; (v) #1 BALL IN GOLF; (vi) FJ; and (vii) FOOTJOY (collectively, the "Acushnet Marks"). Goods bearing one or more of the Acushnet Marks are hereafter referred to as "Acushnet Products."

## PARTIES

5. Plaintiff is a corporation organized under the laws of Delaware, having its office and principal place of business at 333 Bridge Street, Fairhaven, Massachusetts 02719.

6. Defendant is a proprietary limited company organized under the laws of Australia, having a place of business at 12 B Konando Terrace, Edwardstown, South Australia 5039, Australia.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338 (a) and (b). This Court also has diversity

jurisdiction under 28 U.S.C. § 1332 because the matter in controversy is between a citizen of a U.S. state and citizens or subjects of a foreign state and exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.  In addition, this Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

8. This Court has personal jurisdiction over Defendant, and venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2), because Defendant transacts business in this District using the Infringing Marks that gives rise to Plaintiff's claims, Defendant promotes, offers for sale, sells, and distributes goods under the Infringing Marks to customers located in this District, and Defendant is causing harm to Plaintiff in this District.  In the alternative, this Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, Defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and this Court's exercise of personal jurisdiction comports with due process based on Defendant's voluntary and intentional nationwide contacts with the United States, which satisfy the criteria for relatedness, purposeful availment, and reasonableness, such that Defendant could have reasonably anticipated the exercise of personal jurisdiction; and venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to this Court's personal jurisdiction and there is no district in which an action may otherwise be brought as provided in 28 U.S.C. § 1391(b).

## ACUSHNET'S ACTIVITIES AND ITS TRADEMARKS

9. Acushnet is a global leader in the design, development, manufacture, and distribution of exceedingly high-quality, performance-driven golf products that are sold under

multiple, world-famous, federally registered and common law trademarks, including the Acushnet Marks.

10. Acushnet spends considerable amounts of money every year in advertising and promoting the Acushnet Products throughout the world.

11. For 85 years, Acushnet and its predecessors in interest have continuously used the iconic TITLEIST trademark shown below in commerce for a wide range of golf equipment, accessories, and apparel, including golf balls, clubs, bags, gloves, head covers, clothing, and headwear.

*Titleist*

12. TITLEIST is the brand of choice among numerous male and female professional golf players. Currently, there are more than 1,000 professional golf players worldwide that use TITLEIST products.

13. Acushnet's continuous widespread promotion and use of the TITLEIST trademark—since as early as 1933—has led it to become the top brand in the sport of golf. In 2017 alone, Acushnet had more than $512 million in sales of TITLEIST-branded golf balls, over $400 million in sales of TITLEIST-branded golf clubs, and more than $142 million in sales of other TITLEIST-branded golf gear, such as bags, headwear, gloves, and head covers.

14. TITLEIST golf balls have been played by more professional players on the U.S. Professional Golf Association ("PGA") Tour than all other brands of golf balls combined. Acushnet's famed TITLEIST PRO V1 golf ball has been the top-selling golf ball in the market since its launch in 2000, with total sales in excess of $4.5 billion.

15. Acushnet has used the mark #1 BALL IN GOLF in commerce for golf balls since as early as 1978. Through its extensive use and promotion over the last 40 years, this mark has acquired distinctiveness.

16. The Acushnet Trade Dress used to package Acushnet's TITLEIST PRO V1 golf balls is comprised of the marks TITLEIST, # 1 BALL IN GOLF, and PRO V1 positioned in a unique color scheme and design. Through extensive promotion and sales, the Acushnet Trade Dress has acquired distinctiveness and consumers have come to recognize Acushnet as the source of those goods.

17. For nearly a century, Acushnet and its predecessors have continuously used the mark FOOTJOY in commerce for golf shoes, gloves, and apparel, and the mark FJ for such goods since at least as early as 1969. FOOTJOY is the market-leading brand of golf gloves, and has been the top-selling brand of golf shoes on the PGA Tour for over 60 years. In 2017 alone, Acushnet had more than $437 million in sales of FOOTJOY products.

18. Acushnet also owns numerous federal trademark registrations for the Acushnet Marks, which cover a variety of golf equipment, accessories, and apparel, including:

| Acushnet Marks | Registration Nos. |
|---|---|
| TITLEIST | 316118, 934406, 933271, 3176825 |
| *Titleist* (logo) | 1155766, 1273662 |
| PRO V1 | 2806919 |
| *Titleist* #1 ball in golf. (logo) | 1601034 |
| #1 BALL IN GOLF | 3943732 |
| FJ (logo) | 1748627, 2697555 |
| FOOTJOY (logo) | 271260, 1198007, 2163931 |

True and correct copies of printouts from the United States Patent and Trademark Office database showing the current ownership and status of these registrations are attached as Exhibit A.

19. All of the foregoing registrations are valid, subsisting, and incontestable. Pursuant to 15 U.S.C. §§ 1065 and 1115(b), these registrations constitute conclusive evidence of Acushnet's exclusive right to use the Acushnet Marks, as shown in these registrations, in connection with the goods identified therein.

20. By virtue of its long and extensive use, its substantial promotional and marketing efforts, and its strong sales of and revenues from the Acushnet Products, Acushnet has established considerable goodwill and recognition and valuable trademark rights in the Acushnet Marks and the Acushnet Trade Dress. Moreover, the Acushnet Marks and the Acushnet Trade Dress are, and have long been, widely recognized by the general consuming public as the designation of source of the goods offered and provided by Acushnet.

21. By virtue of the inherent strength or acquired distinctiveness of the Acushnet Marks as applied to the Acushnet Products, the extensive worldwide use and promotion of the Acushnet Marks by Acushnet, the strong and sustained commercial success of the Acushnet Products, and the federal registrations for the Acushnet Marks on the Principal Register, the Acushnet Marks have long become famous.

22. Acushnet also owns U.S. Design Patent D763,682 S (the "D682 Patent"), titled "Golf Ball Package," which claims an ornamental design for a golf ball package. Acushnet owns the entire right, title, and interest in the D682 Patent. A true and correct copy of the D682 Patent is attached hereto as Exhibit B. Exemplary figures from the D682 Patent, including a top perspective and a left side, top, and front side view of the protected design are shown below.



**Exemplary Figures from the D682 Patent**

## DEFENDANT'S UNLAWFUL ACTS

23. Defendant operates an interactive website (www.golfgodsonline.com) through which it sells the Infringing Products to consumers throughout the world. Defendant makes that website available in the United States, uses that website to intentionally engage in U.S. commerce, and knowingly accepts a substantial amount of recurrent business from U.S. consumers. Internet users can obtain information about the Infringing Products via Defendant's website, and can contact Defendant using an email address or a sales inquiry submission form

7

posted on Defendant's website.  Defendant further targets and attracts consumers in the United States by listing all prices for the Infringing Products in U.S. Dollars by default, enabling real-time notifications of recent purchases by consumers in the United States, and posting testimonials of U.S. consumers who have purchased Infringing Products on its website.  Screenshots from Defendant's website showing pricing in U.S. Dollars and examples of real-time notifications of recent purchases of Infringing Products by consumers in the United States are attached as Exhibit C.  Screenshots from Defendant's website showing examples of U.S. consumer testimonials on Defendant's website are attached as Exhibit D.

24.     Defendant is not now, nor has it ever been, a licensee of the Acushnet Marks or the Acushnet Trade Dress, or otherwise authorized in any way to use any of the Acushnet Marks or the Acushnet Trade Dress.

25.     As shown below, each of the Infringing Marks is essentially identical in appearance to the corresponding Acushnet Mark, thereby creating a confusingly similar overall commercial impression.  Moreover, Defendant intentionally uses the mark TITTIES in a stylized script that is identical to the distinctive stylized script that Plaintiff has been using for its TITLEIST mark for the past 85 years, and that is covered by several of Plaintiff's federal trademark registrations for its TITLEIST mark.  Defendant's TITTIES mark begins with the same prefix ("Tit-") as Plaintiff's mark and also contains the letters ("ie") in common, the result of which is that the mark TITTIES bears a strikingly similar visual resemblance to the famous TITLEIST mark.

| **Acushnet Marks** | **Infringing Marks** |
|---|---|
| *Titleist* | *Titties* |



26. As shown below, Defendant sells golf balls using packaging that is nearly identical in appearance and overall commercial impression to the Acushnet Trade Dress and the claim of the D682 Patent.  In an effort to cause confusion and deceive consumers, Defendant intentionally uses a nearly identical color scheme and design as part of the Infringing Trade Dress, and places the marks TITTIES, HOE V1, and #1 SLUTTIEST BALL IN GOLF in the exact same position using a similar font and font size, as Acushnet's TITLEIST, PRO V1, and #1 BALL IN GOLF marks.





27. Defendant uses and has used the Infringing Marks in connection with advertising, promoting, offering for sale, selling, and distributing the following Infringing Products to the consuming public:

| **Infringing Marks** | **Infringing Products** |
|---|---|
| Titties | Golf balls and accessories, namely, golf tees and putter covers; clothing, namely, polo shirts, t-shirts, crop tops, singlets, sweatshirts, windbreaker jackets, and socks; headwear, namely, snapbacks, flexi-fit hats, and beanies; and other related goods, namely, beverage sleeves, stickers, and bar mats. |
| Hoe V1 | Golf balls |
| #1 sluttiest ball in golf. | Golf balls |
| FJ FOOTJOB | Hats |

28. Defendant uses the Infringing Trade Dress and the Infringing Marks in connection with identical or closely related goods, targets the same classes of consumers, and uses similar sales channels as Plaintiff. Screenshots showing the Infringing Trade Dress and examples of the

Infringing Products, as advertised, promoted, and offered for sale through Defendant's website (www.golfgodsonline.com) are attached as <u>Exhibit E</u>.

29. Defendant's use of the Infringing Trade Dress and the Infringing Marks falsely suggests that the Infringing Products are connected to, sponsored, approved or authorized by, or affiliated in some way with Plaintiff.

30. Defendant's use of the Infringing Trade Dress and the Infringing Marks intentionally creates an unwholesome and undesirable association—one involving patently offensive and obscene references to women, sexual organs, and sexual activity—in the minds of consumers that conflicts with the positive associations and images that Plaintiff has long promulgated in advertising and promoting the Acushnet Products, and that tarnishes the brand identity and reputation of the Acushnet Marks.

31. Defendant's actions and use of the Infringing Trade Dress and the Infringing Marks are offensive not only to women, but to consumers in general, including men, women, and children of all ages who are offended by vulgar language, inappropriate sexual references, and the disparagement of women.

32. At the time that Defendant began using the Infringing Trade Dress and the Infringing Marks, Defendant had actual knowledge of Plaintiff's rights to the Acushnet Trade Dress and the Acushnet Marks and the Infringing Trade Dress's and the Infringing Marks' unwholesome and obscene association with sexual activity. Therefore, Defendant's use of the Infringing Trade Dress and the Infringing Marks was done willfully and in bad faith in an effort to dilute and trade off of the fame, reputation, and goodwill of Plaintiff and the Acushnet Trade Dress and the famous Acushnet Marks.

## INJURY TO ACUSHNET AND THE PUBLIC

33. Defendant's actions described above have damaged and injured and, if permitted to continue, will further damage and injure Acushnet, the Acushnet Marks, the Acushnet Trade Dress, Acushnet's reputation and goodwill associated with the Acushnet Marks and the Acushnet Trade Dress, Acushnet's reputation for exceedingly high-quality products, and the public's interest in being free from confusion and deception.

34. Defendant's actions described above have caused and are likely to cause confusion or mistake, or to deceive, as to the source or origin of Defendant's Infringing Products, and have falsely suggested and are likely to falsely suggest a sponsorship, connection, license, or association of Defendant, and its goods and commercial activities with Acushnet, thereby injuring Acushnet and the public. *See, e.g.*, Exhibit D, customer testimonial from Ryan M. in the United States ("It's been uneventful so far.  Worn the Titties hat twice for a round of golf and nobody has noticed until I told my buddies I was playing with it said Titties, not Titleist.  Even showed it to my entire family, including my mother-in-law and ole lady and daughters, none of them noticed it til I said something.  LOLLLLLL").

35. Defendant's actions described above are likely to dilute the distinctiveness and value of the Acushnet Trade Dress and the famous Acushnet Marks, thereby injuring Acushnet.

36. Defendant's actions described above have irreparably harmed and, if not enjoined, will continue to irreparably harm Acushnet, the Acushnet Trade Dress, and the Acushnet Marks.

37. Acushnet has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### Trademark Infringement
### Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

38. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 37 of this Complaint.

39. Defendant's actions described above are likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Defendant's Infringing Products and commercial activities, and thus constitute trademark infringement of Plaintiff's federally registered trademarks referred to in Paragraph 18 above in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. Defendant's actions described above have at all times relevant to this action been willful and knowing.

41. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

## SECOND CLAIM FOR RELIEF
### Trademark and Trade Dress Infringement,
### False Designation of Origin, and Unfair Competition
### Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

42. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 41 of this Complaint.

43. Defendant's actions described above are likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Defendant's Infringing Products, Infringing Trade Dress, and commercial activities, and thus constitute trademark and trade dress infringement, false designation of origin, and unfair competition with respect to Plaintiff's trademark rights in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44. Defendant's actions described above have at all times relevant to this action been willful and knowing.

45. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

**THIRD CLAIM FOR RELIEF**
**Unfair Competition Comprising of False and Misleading Statements of Fact**
**Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**

46. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 45 of this Complaint.

47. By engaging in the actions described above, Defendant has made, and continues to make, false and misleading representations of fact to consumers and potential consumers, which, in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

48. Defendant's actions described above have at all times relevant to this action been willful and knowing.

49. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

**FOURTH CLAIM FOR RELIEF**
**Trademark Dilution**
**Under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1)**

50. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 49 of this Complaint.

51. Defendant's actions described above, all occurring after the Acushnet Marks became famous, are likely to cause dilution by blurring or by tarnishment, or both, of the

distinctive quality of the famous Acushnet Marks in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

52. Defendant's actions described above have at all times relevant to this action been willful and knowing.

53. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

### FIFTH CLAIM FOR RELIEF
### Patent Infringement
### Under 35 U.S.C. § 271

54. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 53 of this Complaint.

55. By engaging in the actions described above, Defendant has infringed and continues to infringe the D682 Patent by making, using, selling, offering to sell, and importing into the United States golf balls using packaging having a design that an ordinary observer would confuse as Plaintiff's golf ball package design claimed in the D682 Patent, in violation of 35 U.S.C. § 271.

56. Defendant's acts of infringement have been without express or implied license or permission from Plaintiff.

57. By copying Plaintiff's patented golf ball package design, Defendant's actions described above have at all times relevant to this action been willful and knowing.

58. This is an exceptional case in view of Defendant's unlawful activities, including Defendant's deliberate, intentional, and willful infringement.

59. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

## SIXTH CLAIM FOR RELIEF
### Trademark Dilution
### Under Mass. Gen. Laws ch. 110H, § 13

60. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 59 of this Complaint.

61. Defendant's actions described above are likely to cause injury to Plaintiff's business reputation and to dilute the distinctive quality of Plaintiff's famous Acushnet Marks, valid at common law, in violation of Mass. Gen. Laws ch. 110H, § 13.

62. Defendant's actions described above have at all times relevant to this action been willful and knowing.

63. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

## SEVENTH CLAIM FOR RELIEF
### Unfair Trade Practices
### Under Mass. Gen. Laws ch. 93A, § 11

64. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 63 of this Complaint.

65. Plaintiff and Defendant are each engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

66. Defendant's acts and practices described above constitute unfair methods of competition and unfair or deceptive acts or unlawful practices, which were committed by Defendant primarily and substantially in the Commonwealth of Massachusetts, and have the effect, or are likely to have the effect, of causing Plaintiff to suffer loss of money or property, in violation of Mass. Gen. Laws ch. 93A § 11.

67. Defendant's actions described above have at all times relevant to this action been willful and knowing.

68. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

**EIGHTH CLAIM FOR RELIEF**
**Common Law Unfair Competition**

69. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 68 of this Complaint.

70. Defendant's actions described above create the impression in the mind of the public that Plaintiff is responsible for the quality and performance of Defendant's Infringing Products, or is otherwise connected or associated with Defendant, and thus constitute common law trademark and trade dress infringement and unfair competition in violation of Plaintiff's rights under the common law of the Commonwealth of Massachusetts.

71. Defendant's actions described above have at all times relevant to this action been willful and knowing.

72. As a direct and proximate result of Defendant's actions described above, Plaintiff has been damaged and will continue to be damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. An Order declaring that Defendant's use of the Infringing Marks and the Infringing Trade Dress, as described above, infringes Plaintiff's trademark and patent rights, and that Defendant's actions constitute trademark and trade dress infringement, patent infringement,

false designation of origin, unfair competition, trademark dilution, and unfair trade practices arising under federal, state, and/or common law;

    B.    An Order adjudging that this is an exceptional case under 35 U.S.C. § 285;

    C.    An injunction permanently enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

        1.    from using the Acushnet Marks and the Acushnet Trade Dress, and any mark that is confusingly similar thereto, including without limitation, the Infringing Marks and the Infringing Trade Dress, or any other mark using the stylized "TITLEIST" script, or any other name, mark, or design that is dilutive or likely to lead consumers to mistakenly believe that its products or services are associated with or authorized by Plaintiff; and

        2.    from representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, including without limitation, the Infringing Products, or any activities undertaken by Defendant are associated, approved, sponsored, or connected in any way with Plaintiff;

    D.    An Order requiring Defendant to surrender to Plaintiff all products, merchandise, and promotional materials, and any other physical items in Defendant's possession or control that bear or contain the Infringing Marks or the Infringing Trade Dress, including without limitation, the Infringing Products, or any other mark that is confusingly similar to, or is dilutive of, the Acushnet Marks or the Acushnet Trade Dress;

    E.    An Order requiring Defendant to alter all websites and social media under its control or direction to remove the Infringing Products, the Infringing Trade Dress, the Infringing

Marks, and any other mark that is confusingly similar to, or is dilutive of, the Acushnet Marks or the Acushnet Trade Dress;

  F. An Order requiring Defendant to identify, by name and contact information, all sources, manufacturers, and suppliers for the Infringing Products;

  G. An Order requiring Defendant to file with this Court and serve on Plaintiff's attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

  H. An Order requiring Defendant to pay Plaintiff compensatory damages in an amount as yet undetermined caused by the foregoing acts of trademark and trade dress infringement, trademark dilution, false designation of origin, misrepresentation, unfair competition, and unfair trade practices, and trebling such damages for payment to Plaintiff, in accordance with 15 U.S.C. § 1117 and other applicable laws;

  I. An Order requiring Defendant to account for and pay to Plaintiff any and all gains, profits, and advantages derived through or arising from the foregoing acts of trademark and trade dress infringement, patent infringement, trademark dilution, false designation of origin, misrepresentation, unfair competition, and unfair trade practices, and trebling such profits for payment to Plaintiff, in accordance with 15 U.S.C. § 1117, 35 U.S.C. §§ 284 and 289, and other applicable laws;

  J. Entry of an award of multiple damages as allowed by Mass. Gen. Laws ch. 93A, and fees and costs as provided under state law;

  K. An Order requiring Defendant to pay Plaintiff punitive damages in an amount as yet undetermined caused by Defendant's foregoing acts;

L. An Order requiring Defendant to pay Plaintiff the costs of bringing this action, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117, 35 U.S.C. § 285, and other applicable laws;

M. An Order requiring Defendant to pay Plaintiff pre-judgment interest on the judgment amount; and

N. Other relief as the Court may deem appropriate.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable by a jury in this action.

Respectfully submitted,

ACUSHNET COMPANY

Dated: October 15, 2018 By: /s/ Jonathan M. Gelchinsky

Jonathan M. Gelchinsky (BBO #656282)
Margaret K. Minister (BBO# 624975)
Robert H. Stier (BBO# 646725)
Michael C. Hernandez (*pro hac vice* pending)
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
Telephone: (207) 791-1100
Facsimile: (207) 791-1350